IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Deiaokiki Jackson, | C/A No. 3:22-CV-03838-JFA-SVH |
| Plaintiff, | |
| vs. | |
| | **OPINION AND ORDER** |
| Haile Gold Mine, Inc. d/b/a Oceana Gold Haile Goldmine, | |
| Defendant. | |

## I.    INTRODUCTION

Plaintiff Deiaokiki Jackson ("Plaintiff") brings this action against her former employer, Haile Gold Mine, Inc., d/b/a Oceana Gold Haile Goldmine ("Defendant"), alleging that she was discriminated and retaliated against because of her race and disabilities. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), the case was referred to a Magistrate Judge for review.

Plaintiff filed her complaint in this Court on November 3, 2022. (ECF No. 1). On February 26, 2024, Defendant filed a Motion for Summary Judgment. (ECF No. 28). Plaintiff filed a Response in Opposition on April 9, 2024, and Defendant filed its Reply on April 16, 2024. (ECF Nos. 33, 36). After reviewing the filings in this case, the Magistrate Judge Assigned to this action[1] prepared a thorough Report and Recommendation ("Report") and opines Defendant's Motion for Summary Judgment should be granted. (ECF No. 37). The Report sets forth, in detail, the relevant

---

[1] The Magistrate Judge's review is made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.). The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976).

facts and standards of law on this matter, and this Court incorporates those facts and standards without a recitation.

Plaintiff timely filed her objections to the Report, and thereafter, Defendant filed its Reply. (ECF Nos. 40, 41). Thus, this matter is ripe for review.

## II.     STANDARD OF REVIEW

A district court is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Magistrate's Report, this Court is not required to give an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Thus, the Court must only review those portions of the Report to which Plaintiff has made a specific written objection. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-04009-JMC, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate's Report thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765-RBH, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991)). The Court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for *clear error*." *Id.* (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47) (emphasis added).

The standard for a motion for summary judgment is well known and is stated within the Report which is incorporated herein.

## III.    DISCUSSION

Although this Court incorporates the factual background discussed in the Report, a brief recitation of the relevant facts is necessary to properly address Petitioner's objections. Plaintiff, a black woman, initially began working for Defendant as an accountant. (ECF No. 37, p. 2). Thereafter, her supervisor, Kalend Muteb ("Muteb"), approached her with a suggestion that she move to a buyer role, which Plaintiff ultimately chose to do in February of 2021. *Id.* at 3–4. Plaintiff's new job required her to move to a new office, which could not be accessed without walking a quarter mile down a walking path. *Id.* at 5. Plaintiff shared this office with a man named Ken Muennich ("Muennich"), whom she has testified would exhibit hostile behavior towards her and other employees. *Id.* at 6. In June of 2021, Plaintiff began making complaints about Muennich's behavior. Plaintiff also alleges that she told the occupational nurse at work about her disability—which she alleges to be "hypertension, anxiety, and depression"—that same month. *Id.*; *see also* (ECF No. 33-3, pp. 83–84). At the end of July 2021, Plaintiff applied for FMLA coverage that was ultimately extended until October 25, 2021. (ECF No. 37, p, 8).

In August 2021, Plaintiff attended a wedding of some family friends. She posted about her presence at the wedding using her Instagram page "uniqueexpressionsevents" and left a comment on a Facebook post about the wedding, implying that she had served as a bridal consultant at the wedding. *Id.* at 9. She also appeared in a video of the wedding assisting the bride and seemingly coordinating the ceremony and the reception. *Id.* at 9–10. Burton Jaillette ("Jaillette"), a supply chain superintendent for Defendant, found the posts and forwarded screenshots of the posts to Glenda Parkman ("Parkman"), a member of Defendant's human resources department. *Id.* at 10. Parkman attempted to contact Plaintiff regarding the posts by phone on September 20th and by email and certified mail on September 23rd. *Id.* at 10-11. In both of these communications, Parkman requested an explanation for the posts and expressed that Defendant was under the impression that Plaintiff was "working in [her] own business" while on leave, in violation of company policy. *Id.* Plaintiff responded to Parkman's email on September 24th, stating that she was not "actively working for pay." *Id.* at 11. After Parkman replied to Plaintiff's email asking to speak with her on the phone, Plaintiff did not reply. *Id.* On September 30, 2021, six days later, Muteb decided to terminate Plaintiff's employment and informed her of that decision in a letter. *Id.* at 11–12. Just over a year after her termination, Plaintiff filed a complaint in this Court bringing claims under the FMLA, ADA, and Title VII. *Id.* at 1–2.

### A. The Magistrate Judge Properly Construed the Facts in Favor of the Plaintiff

Plaintiff first objects to the Magistrate Judge's construction of the facts in this case, arguing that the Report views "the facts cited by evidence in the record . . . in a light most favorable to Defendant." (ECF No. 40, p. 4). Plaintiff appears to ask this Court to conduct a full review of every fact in the Report, stating that she "objects to the facts in the R&R to the extent they are inconsistent with the facts as stated in Plaintiff's Response to Defendant's Motion for Summary Judgment."

(ECF No. 40, p. 7). This Court declines to do so, as such an objection is nonspecific because it does not "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). However, Plaintiff also points to several specific findings of fact that it argues are errant that the Court will address in turn.

Plaintiff first argues that Defendant's 30(b)(6) witness's testimony could create a reasonable inference that Defendant intended to fire Plaintiff regardless of whether she held other employment. (ECF No. 40, p. 4). Upon review of the testimony in question, this Court agrees that this line of testimony can only be interpreted to mean that Defendant's policies under which Plaintiff was terminated do not distinguish between outside employment for pay and outside employment for no pay. (ECF No. 33-1, pp. 101–02). The Magistrate Judge did not improperly construe this testimony in favor of Defendant, as it is only reasonably susceptible to one interpretation, which the Report correctly noted. This objection is overruled.

Secondly, Plaintiff argues that the Report improperly "avers [that] Plaintiff's affidavit appears inconsistent with her deposition testimony with respect to Plaintiff's request to work from home on an occasional basis." (ECF No. 40, p. 5). However, Plaintiff's deposition testimony itself plainly states that she "asked to be able to work from home." (ECF No. 33-3, p. 92). Plaintiff repeatedly refers to her request to work from home without qualifying her statements or describing her request as one for "occasional" or "as-needed" accommodation. Thus, the only evidence that Plaintiff has provided to support her argument that her request for a work from home arrangement was intended to be "intermittent" is the affidavit she prepared after her deposition. (ECF No. 33-10, p. 2 (stating that she "requested an accommodation to be able to work remotely intermittently only when my disability became debilitating")). The Report correctly notes that Plaintiff's affidavit, which contradicts her deposition testimony, cannot create an issue of material fact and

thereby defeat summary judgment. *See Barwick v. Celotex Corp.*, 736 F.3d 946, 960 (1984) (stating that "[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct"). This objection is overruled.

Third, the Report correctly interpreted Plaintiff's own testimony that her opposition to her new workplace was not related to her disability but rather her desire to avoid "walk[ing] outside in the elements." (ECF No. 33-3, pp. 97–98). Plaintiff appears to argue that this factual finding is errant in light of her arguments that she was forced to move offices "as punishment for reporting complaints of discrimination." (ECF No. 40, p. 6). The Report's finding that Plaintiff stated her disability was separate from her objection to her new office is not errant and does not improperly weigh evidence in favor of Defendant. Further, the Report addresses in detail Plaintiff's other arguments regarding her discrimination and retaliation claims as they relate to her new office location in a later section of the Report. (ECF No. 37, pp. 27-29). To the extent that Plaintiff objects to this portion of the Report, the Court has reviewed it and finds that the Report correctly concludes that Plaintiff's shift to a new office location was not an "adverse employment action." *See Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011). The Court agrees that there is more than sufficient evidence that Defendant had a legitimate reason for requiring Plaintiff to work in the same office as the other buyers, as opposed to remaining in the administration building. (ECF No. 28, p. 4). This objection is overruled.

Fourth, Plaintiff argues that the Report "incorrectly determined Plaintiff's anxiety and depression were caused by 'grief and work stress' when the record shows Plaintiffs 'grief' and 'work stress' have different sources." (ECF No. 40, p. 6). The Report found, and this Court agrees, that Plaintiff has not provided evidence that she had a disability that "substantially limit[ed] one

or more major life activities." (ECF No. 37, p. 17). Plaintiff has given deposition testimony in which she discusses a report from The Center for Emotional Health that was prepared in September of 2021 which states that she has previous diagnoses of "major depressive disorder" and "generalized anxiety disorder." (ECF No. 33-3, pp. 178–81). However, Plaintiff has also provided evidence that the anxiety and high blood pressure at issue in this case arose on July 28, 2021 as stated in her FMLA form, in addition to Plaintiff's own testimony that her anxiety and depression were only exacerbated after she was placed in the same office as Mr. Meunnich. (ECF No. 33-13, p. 3; ECF No. 28-1, pp. 66–67). Thus, this Court agrees with the Magistrate Judge's finding that Plaintiff did not have a physical or mental impairment that substantially limited one or more major life activities, or a record of such impairment, when she was transferred to her new office in approximately June of 2021. Even if Plaintiff's new interpretation of her testimony were applied in this case, there is still no evidence that a record of Plaintiff's impairment existed prior to her transfer, or that she was "regarded as having . . . an impairment" by her employer. 42 U.S.C. § 12102(1). The Report's reliance upon Plaintiff's testimony that "grief and work stress" caused her "depression [and] anxiety" and its ultimate conclusion that Plaintiff has not satisfied the ADA's requirements are proper and do not constitute an incorrect construing of facts in favor of Defendant. This objection is therefore overruled.

Lastly, Plaintiff objects to the Report's characterization of Defendant's "Other Employment" policy and claims that "the policy used to terminate Plaintiff's employment does not distinguish between the prohibition on outside employment whether or not an employee is on leave." (ECF No. 40, p. 7). Plaintiff was terminated under not one, but two policies—Defendant's Standards of Conduct Policy and its FMLA policy. The former prohibits "unapproved outside employment while on a leave of absence," and the latter prohibits outside employment while on

FMLA leave. (ECF No. 40, p. 10; ECF Nos. 28-11, 28-12). The Report found, and this Court agrees, that Plaintiff was terminated under both policies' prohibition on holding outside employment during a leave of absence, which includes FMLA leave. Any other reading of the company's policies would be unnatural and unnecessarily contorted. This objection is therefore overruled.

Plaintiff's other brief objections to the Report's view of 1) evidence that Plaintiff was a guest at the wedding at issue; 2) discussions of her race by Muteb; 3) Plaintiff's response to Defendant's email asking her whether she had outside employment; and 4) Plaintiff's lack of a timely response to Defendant's final email are unavailing. (ECF No. 40, p. 7). This Court has reviewed the underlying evidence, the Report and its summation of the facts, and the parties' briefs and finds that the Report's use and characterization of the above facts is proper and does not improperly weigh evidence in favor of the Defendant as the moving party. All evidence has been construed in the light most favorable to Plaintiff. Plaintiff's objections to the Report's construction of the above-mentioned facts are thus overruled.

### B. Application of the *Muldrow* Standard

Plaintiff objects to the Report "to the extent [that it] suggests Plaintiff is required to show significant harm" with respect to her claims of discrimination, retaliation, and hostile work environment under Title VII. (ECF No. 40, p. 6). The Report does not specifically state that Plaintiff was required to show significant harm. The Report states that Plaintiff was required to show that "she suffered an 'adverse employment action' or something that caused 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or . . . a significant change in benefits.'" (ECF No. 37, pp. 27–28 (quoting *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011)). The Report finds

8

that "[m]oving offices does not qualify as an adverse employment action," without applying any incorrect standard of proof to Plaintiff. (ECF No. 37, p. 28). This Court agrees that Plaintiff has not established a prima facie case of discrimination or retaliation and holds that the Report does not apply incorrect law to Plaintiff. This objection is overruled.

### C. Whether Defendant's Reason for Termination of Plaintiff's Employment is Pretext

Plaintiff states that the Report "assumes Plaintiff has established prima facie cases of discrimination and retaliation with respect to Plaintiff's Title VII, 1981, and FMLA claims." (ECF No. 40, p. 7). Plaintiff points to *Jones v. Giant Foods, Inc.* and argues that: "Where the defendant's proffered evidence for showing that a plaintiff was not meeting the employer's expectations mirrors the nondiscriminatory reason produced by the employer, courts have assumed a prima facie case and proceeded to the pretext inquiry . . . ." No. Civ. JFM-00-3469, 2000 WL 183593 (D. Md. Nov. 27, 2000), *aff'd sub nom. Muhammad v. Giant Food Inc.*, 108 F. App'x 757 (4th Cir. 2004). However, the reasoning used in *Jones* has been rejected by another court in this district using reasoning this Court finds highly persuasive. *See Granda v. Old Dominion Freight Line*, No. CV 3:19-3294-JMC-KDW, 2021 WL 4596995 (D.S.C. July 14, 2021), *report and recommendation adopted*, No. 3:19-CV-03294-JMC, 2021 WL 4472743 (D.S.C. Sept. 30, 2021) (stating that automatically assuming a prima facie case when "an employer's nondiscriminatory reason for terminating an employee . . . is also the reason shown for the employee's not meeting legitimate expectations . . . would eviscerate the need for a prima facie analysis in many, many cases"). This Court declines to assume that Plaintiff has established a prima facie case as the *Jones* court did. Thus, this objection to the Report is overruled.

### 1. Whether Temporal Proximity Proves Pretext

Plaintiff objects to the Report's "fail[ure] to consider or address the close temporal proximity between the protected activity and the employment action" in the context of Plaintiff's Title VII, FMLA, and 42 U.S.C. § 1981 claims.[2] (ECF No. 40, p. 8). Plaintiff asserts that the fifteen-day gap between her request for an extension of her FMLA leave and Defendant's decision to terminate her employment demonstrates that the reason given for her termination was merely pretextual. This Court holds that the Report's decision to disregard Plaintiff's argument regarding the existence of pretext in this case was correct in light of existing caselaw that has held that temporal proximity alone is not sufficient to show pretext.[3] *See Batten v. Grand Strand Dermatology, LLC*, No. 4:18-CV-0616-MGL-TER, 2019 WL 9667692, at *9 (D.S.C. Dec. 20, 2019, *report and recommendation adopted* by 2020 WL 2487543 (D.S.C. May 14, 2020). The facts surrounding Plaintiff's request for an extension of her FMLA leave, taken together, do not establish that Defendant's reason given for terminating her was pretextual. The Report found, and this Court agrees, that none of the evidence provided by Plaintiff suggests that Defendant's stated reason for her termination—"that [Plaintiff] had violated Defendant's policies that forbid employees from holding outside employment while on a leave of absence"—is a pretextual reason. (ECF No. 37, p. 26). Defendant met its burden of production under the *McDonnell Douglas Corp v. Green* framework and provided a non-discriminatory or non-retaliatory reason for Plaintiff's termination—that she was violating the company's policies prohibiting outside employment while on leave. 411 U.S. 792, 800–06 (1973); *see also* (ECF Nos. 28-11, 28-12; ECF No. 33-1, pp. 45–

---

[2] It appears that Plaintiff's objection centers around the Report's recommendations regarding pretext in the context of Plaintiff's termination, not Plaintiff's transfer to a different office. This Court's analysis will focus on the Report's discussion of pretext in its "Claims Concerning Termination" section accordingly. (ECF No. 37, p. 20).

[3] To the extent that the Report does not "consider" the temporal proximity between Plaintiff's request for an extension and her firing, this Court has considered it and finds Plaintiff's arguments regarding pretext unpersuasive even given the proximity between her request and her termination.

46). Plaintiff did not in turn provide evidence which would prove by a "preponderance of the evidence" that Defendant's stated reason was pretext. *Guessous v. Fairview Prop. Invs.,* LLC, 828 F.3d 208, 216 (4th Cir. 2016). This objection is overruled.

### 2. Defendant's "Other Employment" Policy

Plaintiff argues that Defendant's "other employment" policies are so broad that "nearly any activity could be considered outside work."[4] (ECF No. 40, p. 9). Thus, Plaintiff argues that Defendant's interpretation is one that "a jury could consider unworthy of credence" and that the Report erred in relying on it. (ECF No. 40, pp. 10–11). Regardless of the breadth of Defendant's definition of "employment," Plaintiff has agreed that her social media posts and the way in which she presented her involvement at the Brevard wedding "looked like [she was] working" and that it was "reasonable for Oceana Gold to believe . . . that it looked like [she was] working." (ECF No. 33-3, p. 36). Further, all of the evidence presented on this point, including Plaintiff's own testimony, indicates that it was entirely reasonable for the Defendant to believe that Plaintiff was violating company policies prohibiting other employment.[5] Lastly, Plaintiff attacks Defendant's interpretation of its "outside employment" policies as being so overly broad that it is unworthy of credence. Specifically, Plaintiff points to an exchange between her attorney and Defendant's 30(b)(6) representative to suggest that Defendant's policy is unreasonably broad. (ECF No. 33-1, pp. 58–62). A policy that does not distinguish between paid and unpaid employment and instead recognizes that some activities constitute "employment" even if they are not paid is not

---

[4] Plaintiff's fourth objection, laid out on page thirteen of her objections, essentially repeats this same argument—that Defendant's definition of outside employment is unbelievably broad. These two objections are the same and are both addressed by this portion of the Court's order.

[5] Defendant has presented ample evidence of its contemporaneous efforts to determine whether Plaintiff was holding other employment, Plaintiff's responses which failed to clarify the nature of her role at the Brevard wedding, and the social media posts and other information which gave Defendant reason to believe she was employed in violation of company policy. All of this evidence, when viewed in the light most favorable to Plaintiff, fails to show that Defendant's reason given for terminating Plaintiff's employment was pretextual or based on a disingenuous interpretation of company policy.

unreasonably broad but is simply realistic. Not all employment is necessarily for pay, and an interpretation of a company policy that acknowledges such is not disingenuous. Thus, Plaintiff has presented no evidence aside from her own disagreement with Defendant's interpretation of its policies to suggest that Defendant's interpretation of its policies prohibiting outside employment was pretextual. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444 (4th Cir. 1998) ("It is the perception of the decision maker which is relevant."), *overruled on other grounds by National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002); *see also Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011) (stating that "[o]nce an employer has provided a non-discriminatory reason for its decision, the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it"). She has not met her burden of proving by a preponderance of the evidence that Defendant's stated reason for her termination is pretext. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). This objection is overruled.

### 3. The Sufficiency of Defendant's Investigation

Plaintiff argues that Defendant's investigation of her possible outside employment was inadequate and the Report erred in finding that the inadequate investigation was not evidence of pretext. (ECF No. 40, p. 11). However, again, Plaintiff has acknowledged that it was reasonable for Defendant to believe that she was working based on all of the evidence available to Defendant, namely social media posts made by Plaintiff and a Youtube video showing Plaintiff appearing to work at the wedding. (ECF No. 33-3, p. 36). Plaintiff's efforts to argue that Defendant may not have recognized her in the video fall flat, as the Report rightly observes that "Plaintiff's identity is not an issue in this case." (ECF No. 37, p. 22). Further, Plaintiff's own failure to cooperate with Defendant's efforts to investigate the nature of her presence at the wedding does not make

Defendant's decision to terminate her pretextual. Plaintiff has not met her burden to show that the nature of Defendant's investigation demonstrates pretext. This objection is denied.

### 4. Whether Parkman Violated the Speak Up Policy or Concealed Information from Muteb

For the first time, in her objections, Plaintiff argues that Parkman "omitted or concealed" pertinent evidence relating to her investigation of Plaintiff's outside employment. Because district courts are required to "consider new arguments relating to existing issues," this Court will evaluate this new argument made by Plaintiff. *N. Carolina State Conf. of the NAACP v. Hirsch*, No. 1:18-CV-1034, 2024 WL 554301 (M.D.N.C. Feb. 12, 2024). However, this argument does nothing to shore up Plaintiff's argument that Parkman was biased against her and in fact made the decision to fire her. As the Report noted: "In instances where the employee contends the decisionmaker relied on a biased report, 'the proof will normally consist of showing that the subordinate concealed or presented false information,' and the employee 'must show that the omitted or false information caused the adverse employment action.'" (ECF No. 37, p. 24 (quoting *Jenks v. City of Greensboro*, 495 F. Supp. 2d 524, 529 (M.D.N.C. 2007)). Plaintiff claims that the length of one of Parkman's meetings with Muteb indicates that Parkman did not show Muteb all of the evidence gathered in her investigation. (ECF No. 40, pp. 14–15). Plaintiff also claims that Parkman left out evidence—namely a photo of Plaintiff with her granddaughter and a post from 2017—that could have benefitted Plaintiff. (ECF No. 40, p. 15). However, the record evidence indicates that Parkman and Muteb met at least twice to review evidence of Plaintiff's possible outside employment, and Muteb himself has testified that he reviewed all pertinent evidence, including the Youtube video showing Plaintiff working at the wedding.[6] (ECF No. 33-1, pp. 50, 65–66; ECF No. 28-2, pp. 6–7). Plaintiff

---

[6] To the extent that Parkman did not present or Muteb did not review a photograph of Plaintiff with her granddaughter that was posted to her "uniquexpressionsevents" account or a post from 2017 which Plaintiff refers to but does not cite to in the record, Plaintiff has provided no evidence that these two omissions "caused the adverse employment

has not shown that any evidence that may have been omitted "caused the adverse employment action," or that the potentially omitted evidence would have made any difference in the outcome of the investigation.

Additionally, Plaintiff has not provided any evidence that she was "directly and uniquely disadvantaged" by any alleged inadequacies in Parkman's investigation, as required by Fourth Circuit precedent. *See Russell v. Harlow*, 771 F. App'x 206, 207–08 (4th Cir. 2019); *see also Lockley v. Town of Berwyn Heights*, C/A No. JFM-14-825, 2015 WL 5334256, at *8 (D. Md. Sept. 11, 2015) (stating that "[c]ourts in this District have found that for an employer's violation of its internal policies to be evidence of pretext, 'the violation must be material and significant'"). Nor has she presented "evidence of an obviously inadequate investigation." *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 905 (4th Cir. 2017). Plaintiff offers only speculation that "it is possible the reviewing committee could have determined there was not sufficient information to investigate." (ECF No. 40, p. 14). *See Beale v. Hardy*, 789 F.2d 213, 214 (stating that a "nonmoving party . . . cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another").

The lack of a written report and failure to report to a committee do not constitute a "direct" and "unique" disadvantage in this case, and they do not render the investigation "obviously inadequate." Parkman discovered evidence suggesting that Plaintiff was holding "other employment," attempted to contact her using numerous modes of communication, and Plaintiff was ultimately unresponsive to Defendant's attempts to reach her. Plaintiff has not met her burden

---

action." *Jenks v. City of Greensboro*, 495 F. Supp. 2d 524, 529 (M.D.N.C. 2007). Muteb and Parkman were primarily concerned with the obvious appearance of outside employment, not whether Plaintiff had also used her business Instagram account to post pictures of family members. Plaintiff's complaints that the screenshots of her social media do not show the year in which the photos were taken fail because the timing of the wedding and Plaintiff's service as a bridal consultant at that wedding are not in dispute.

of showing by a preponderance of the evidence that a violation of the Speak Up policy or omission of a single photograph from Parkman's discussion with Muteb were pretext for discrimination. This objection is overruled.

### 5. Whether Parkman Was a True Decision Maker

Plaintiff next argues that the Report erred in its interpretation of *Hill v. Lockheed Martin Logistics Mgmt., Inc.* and further argues that the Report was incorrect in finding that Parkman "was not a subordinate who did not have supervisory authority." (ECF No. 40, p. 16). The Fourth Circuit has held that: "To survive summary judgment, an aggrieved employee who rests a discrimination claim under Title VII or the ADEA upon the discriminatory motivations of a subordinate employee must come forward with sufficient evidence that the subordinate employee possessed such authority as to be viewed as the one principally responsible for the decision or the actual decisionmaker for the employer." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 291 (4th Cir. 2004). Plaintiff appears to argue for the first time in her objections that Jaillette—not Parkman—was the subordinate who harbored animus against her and that his bias was then adopted by Parkman, the decisionmaker. (ECF No. 40, pp. 16–18). Because Plaintiff has presented no evidence to show that Parkman or Jaillette could have terminated Plaintiff's employment, this objection fails. All evidence on the record in this case shows that Muteb was the sole decisionmaker with the ability to terminate Plaintiff's employment.[7] Further, Plaintiff has produced no evidence that Parkman or Jaillette had a discriminatory or retaliatory motive to seek her termination. Thus, this objection is overruled.

---

[7] The company's organization chart (ECF No. 36-1) and Parkman's testimony (ECF No. 33-1, pp. 70–71) both confirm that 1) Parkman is not Muteb's subordinate and 2) Parkman cannot terminate employees unless directed to do so by that employee's manager.

### D. Whether Muennich or Hinson are Proper Comparators

Plaintiff argues that the Report erred in finding that neither Ken Muennich nor Melodie Henson were proper comparators "to support Plaintiff's position her treatment violated Title VII, 1981, the ADA, and the FMLA." (ECF No. 40, p. 18). First, Plaintiff argues that Muennich is a proper comparator to Plaintiff because he was permitted to engage in outside volunteer work, and the company policy used to terminate Plaintiff prohibited all outside employment, regardless of whether an employee was on leave. (ECF No. 40, pp. 19–20). However, the policies under which Plaintiff was terminated were both policies that specifically applied to employees on leaves of absence. The "Standards of Conduct" policy prohibits "[a]ny unapproved outside employment while on a leave of absence," and the FMLA policy inherently applies to employees who are eligible for leave under the "Family and Medical Leave Act." (ECF Nos. 28-11, 28-12). Plaintiff attempts to contort the FMLA policy to mean that all outside employment is prohibited by Defendant. This Court will not adopt an unnatural reading of a policy that inherently applies to those taking leave which states that employees taking FMLA leave may not "hold[] other employment" while on any kind of leave, including FMLA leave.[8] Plaintiff was terminated for working while on FMLA leave in violation of two company policies, both of which prohibit holding outside employment while on leave. Muennich, on the other hand, was not on FMLA leave or any other type of leave while he engaged in volunteer work. Thus, this Court finds that Muennich and Plaintiff are not proper comparators. This objection is overruled.

---

[8] Further, even if this Court were to adopt Plaintiff's reading of the "FMLA policy" to mean that Defendant prohibited all unapproved outside employment, Plaintiff has presented no evidence that Muennich had not received approval for his volunteer services. Plaintiff has stated that she did not receive approval to work while on FMLA leave. (ECF No. 33-3, pp. 216–17). Thus, Plaintiff and Muennich are not comparators even under Plaintiff's reading of Defendant's FMLA policy.

Plaintiff also argues that Hinson is a relevant comparator to Plaintiff because Hinson worked from home occasionally and because Defendant has testified that it "would not create an undue hardship to allow employees to work from home." (ECF No. 40, pp. 20–21). This Court has already addressed Plaintiff's argument regarding the nature of her request to work from home. The evidence on the record clearly indicates that Plaintiff's request to work from home was not a mere request to work from home "occasionally." *See supra* Section III.A. Thus, the occasional nature of work that Hinson or Muennich may have been permitted to complete from home is irrelevant to Plaintiff's arguments.

Finally, Plaintiff's interpretation of Defendant's testimony regarding undue hardship caused by employees working from home is incorrect. Defendant testified in the course of a line of questioning regarding employees seeking temporary work-from-home accommodations that it would not cause an undue hardship for an employee to do so. (ECF No. 33-1, p. 88–90). However, when asked whether it would pose an "undue hardship for the company" to permit employees to "work from home on a permanent basis," Defendant stated that it would. (ECF No. 33-1, p. 114). Ultimately, Plaintiff has not shown that either Meunnich or Hinson is a proper comparator, as neither sought a permanent work-from-home arrangement, and neither was on leave—FMLA or otherwise—while they allegedly were permitted to work from home. This objection is overruled.

### E.  Whether Plaintiff Has Established a Prima Facie Hostile Work Environment Claim

Plaintiff next argues that the Report erred in rejecting Plaintiff's argument "that Defendant knowingly placed her in an environment to exacerbate her anxiety, high blood pressure, and depression or as a tool to retaliate against her."[9] (ECF No. 40, p. 21). The Report found, and this

---

[9] To the extent that Plaintiff suggests that the Magistrate Judge misapplied the wrong standard in its Report, this Court finds that it did not. The Magistrate Judge properly considered whether there was "a genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). This requires the judge to weigh—to some extent—Plaintiff's argument that there are disputes over material facts against Defendant's arguments that there are no such disputes.

Court agrees, that Plaintiff has failed to prove that Defendant was aware of her disabilities at the time she moved offices.[10] Because there is no evidence that Defendant was aware of Plaintiff's disabilities at the time her office location changed, Plaintiff has not proved that Defendant moved her to use her disability against her as a form of retaliation or to exacerbate her disability in some way. At the time that she ultimately moved offices, Plaintiff has only provided evidence that the occupational nurse may have been aware of her disability. (ECF No. 33-3, pp. 90–91 (stating that Plaintiff believes she informed Nurse Cindy Blackman about her disability "around June 2021")). Human Resources became aware when she requested FMLA leave in July of 2021, and Defendant as a whole became aware when her FMLA paperwork was submitted a month after she began her FMLA leave. (ECF No. 33-3, pp. 82, 89–90). The complaints Plaintiff made in April of 2021 only pertained to her allegations that she was not being given a pay raise and did not relate to her disability in any way. (ECF No. 33-3, pp. 130–31). Lastly, the alleged remarks made about Plaintiff's FMLA leave were made after she transferred offices. (ECF No. 33-3, p. 195). There is no evidence that anyone aside from the occupational nurse was remotely aware of Plaintiff's disability at the time that she moved offices, and thus it cannot have been the reason that Plaintiff was moved to a different office.

Further, Plaintiff has failed to prove that a "severe or pervasive" environment existed, nor has she shown that any harassment she alleges was based on her race or her disabilities. *See E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 206, 215 (4th Cir. 2008) (stating that "plaintiffs must clear a high bar in order to satisfy the severe or pervasive test"). Lastly, and perhaps most importantly, there is no evidence that any harassment on Muennich's part was related to Plaintiff's

---

[10] For purposes of this objection, Plaintiff only refers to her hostile work environment claim under the ADA, and does not make mention of her Title VII or her § 1981 claims. This Court will thus only discuss facts and arguments relating to Plaintiff's hostile work environment claim under the ADA as it addresses this objection.

disabilities or any other protected trait. Even taking all available evidence in the light most favorable to Plaintiff, Plaintiff has not demonstrated that she was harassed because of any protected trait or that she was subjected to a hostile work environment in order to exacerbate her disabilities or to retaliate against her for any reason. This objection is overruled.

### F.  Whether Plaintiff is a Qualified Individual with a Disability

Plaintiff next objects to the Report's finding that she is not a qualified individual with a disability under the ADA. (ECF No. 40, p. 22). For Plaintiff to be disabled under the ADA, Plaintiff must have "a record of . . . a physical or mental impairment that substantially limits one or more life activities" or be "regarded as having such an impairment." 42 U.S.C. §12102(1). This Court has already addressed Plaintiff's arguments regarding the Report's analysis of whether Plaintiff was disabled under the ADA at the time of her transfer to a new office, but it will still address this largely repetitive objection briefly. *See supra* Section III.A. Plaintiff has presented the following evidence in this case: She has testified that her anxiety and depression were caused by "grief and work stress" (ECF No. 33-3, pp. 84–86); she has testified that her placement in an office with Muennich exacerbated her anxiety and depression (ECF No. 33-3, pp. 192–94); and she has provided her FMLA form which states that her anxiety and high blood pressure began on July 28, 2021. (ECF No. 28-8). Plaintiff has also given testimony regarding her visits to the "Center for Emotional Health" and referenced a report which refers to previous diagnoses of depression and anxiety, which was prepared on September 13, 2021. (ECF No. 33-3, pp. 179–82). Plaintiff is not permitted to "create a jury issue by identifying discrepancies in [her] own account of the facts." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 186 (4th Cir. 2001). Because the only "dispute" at issue here stems from a discrepancy in Plaintiff's own testimony and other exhibits provided to the Court, this Court declines to find that there is an issue of material fact as to whether Plaintiff

is a qualified individual under the ADA. The Report's conclusions that Plaintiff is not a qualified individual because her anxiety and depression were caused by her work environment and that Plaintiff was not regarded as having a disability by her employer were correct.[11] This objection is overruled.[12]

### G. Whether there is Evidence of Prejudice under the FMLA

Finally, Plaintiff argues that the Report misinterpreted *Adkins v. CSX Transportation, Inc.* and incorrectly found that Plaintiff cannot prove "the prejudice element of [her] interference claim" because Plaintiff was terminated for misconduct. (ECF No. 40, p. 23). First, Plaintiff is incorrect regarding the reason for her termination. Plaintiff was terminated, in part, because she violated Defendant's Standards of Conduct Policy prohibiting unapproved outside employment while on a leave of absence. (ECF No. 28-11). Thus, Plaintiff was plainly terminated due to misconduct. Second, Plaintiff asks this Court to read *Adkins* far more narrowly than is appropriate. The *Adkins* plaintiffs were fired for violating workplace rules which prohibited dishonesty. *Adkins v. CSX Transp., Inc.*, 70 F.4th 785, 789 (4th Cir. 2023). Accordingly, the *Adkins* defendant was granted summary judgment because "[t]he FMLA does not prevent an employer from terminating an employee for . . . misconduct." *Id.* at 797. In much the same manner, Plaintiff was found to have violated Defendant's "Standards of Conduct" rule prohibiting unapproved outside employment while on leave. (ECF No. 28-11). Thus, the FMLA did not bar Defendant from

---

[11] Plaintiff points to Defendant's 30(b)(6) deposition testimony to argue that she was regarded as disabled. (ECF No. 33-1, p. 45). Defendant's acknowledgement that it does not dispute the documentation from Plaintiff's doctor noting a disability, which it received a month after she began FMLA leave, is not proof that she was regarded as disabled wen she was transferred to a new office, when she made complaints about Muennich, and when she requested to work from home, all of which preceded Defendant's receipt of her FMLA paperwork.

[12] The Report notes, and this Court agrees, that even if Plaintiff had proved that she was a qualified individual under the ADA, she has still failed to prove her hostile work environment claim for the reasons explained in Section III.E. Further, Plaintiff has failed to prove her other ADA-related claims because: 1) she has not demonstrated that defendant's reason for her termination was pretextual, and 2) there is no evidence that any decisionmaker was aware of her disability when she moved offices, was allegedly harassed, or asked to work from home.

terminating her employment. Because she was terminated for misconduct, the Report found and this Court agrees that Plaintiff cannot show that she suffered prejudice.[13] (ECF No. 37, pp. 34–35). This objection is overruled.

To the extent that Plaintiff does not specifically object to the Magistrate Judge's Report, the Court is not required to give an explanation for adopting the recommendation. This Court has reviewed all portions of the Report not specifically objected to by Plaintiff for clear error and finds none.

## IV.     CONCLUSION

This Court adopts the Magistrate Judge's Report and Recommendation and incorporates it herein by reference. (ECF No. 37). Consequently, Defendant's motion for summary judgment is granted. (ECF No. 28).

IT IS SO ORDERED.


July 26, 2024                                          Joseph F. Anderson, Jr.
Columbia, South Carolina                              United States District Judge

---

[13] Plaintiff repeats her argument regarding the *Jones v. Giant Foods, Inc.* case in this portion of her objections. This Court will not repeat its ruling regarding the applicability of *Jones* to this case, as it has already been thoroughly addressed. *See* Section III.C.